■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT McCAIN, Appellant.—Appeal by the defendant from a judgment of the County Court, Rockland County (Edelstein, J.), rendered July 9, 1981, convicting him of murder in the second degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements made by him to the police.

Ordered that the judgment is affirmed.

The defendant and Richard LaBarbera were tried jointly for the brutal murder of a high school girl in Pearl River, New York. The victim's body was discovered on the morning of October 29, 1980, lying face down near a pool of blood with her dungarees pulled down around her ankles. There were five stab wounds on the victim's back, blood coming out of the nose, a swollen area on the forehead and a series of bruises on the neck, face and calf area of one of the legs.

Both the defendant and LaBarbera were questioned by the police after the discovery of the victim's body. After voluntarily agreeing to return to New York from Arkansas in the company of the police, the defendant, who had been advised of his rights, expressed a desire to get to the bottom of the Pearl River incident because he was not sure, at that point, of what he had done. The defendant was again advised of his rights upon his arrival at LaGuardia Airport and at the Orangetown Police Station. He indicated that he understood all of his rights and desired to speak with the police. The defendant eventually confessed to following the victim down North Main Street, striking her in the head with a rock which was approximately six inches in diameter, beating her about the face and throat areas until she was unconscious, and raping her. At one point, the defendant, who was crying, rested his head against the chest of one of the detectives and made the following utterances: "I killed her, I killed her" and "can you ever forgive me?" The defendant repeated his confession in the presence of two other detectives.

Dr. Frederick T. Zugibe, who was the Chief Medical Examiner of Rockland County, rendered the opinion that the victim's head and neck wounds were inflicted prior to the stab wounds. He further testified, with a reasonable degree of medical certainty, that the victim would have died within a period of 6 to 12 hours as a result of the neck compression and the contusion to the head and resulting edema of the brain even if the stab wounds had not been sustained.

Dr. Robert Shaler from the office of the New York City Chief Medical Examiner, ran an electrophoresis test on a blood sample found on the defendant's belt. The electrophoresis test revealed the presence of four enzymes which were consistent with the victim's blood composition. Significantly, .6 of 1% of the population possesses blood of that type.

The codefendant LaBarbera made a series of conflicting statements to the police in which he did not admit his own

guilt. LaBarbera informed the police that he saw the defendant following a girl up North Main Street and then striking her in the head with an object. The defendant then proceeded to drag his victim up a driveway where he made striking motions at her back. LaBarbera fled, but returned to the scene later and found the body of the victim lying face down near a large pool of blood with her jeans and her underwear pulled down around her ankles.

The defendant's counsel thereupon moved for a mistrial and severance based upon a violation of the *Bruton* rule *(see, Bruton v United States,* 391 US 123). The court denied the motion noting that both defendants had been aware of the *Bruton* problem and had not previously moved for a severance on that particular ground. The court thereafter advised the jurors that the statements made by LaBarbera concerning the defendant could be considered only against LaBarbera and not against the defendant.

Consequently, the statements of both the defendant and LaBarbera were introduced into evidence at their joint trial. Neither the defendant nor LaBarbera testified at the trial. Both were convicted of two counts of murder in the second degree and LaBarbera's conviction has been affirmed by this court *(People v LaBarbera,* 128 AD2d 806).

While the Confrontation Clause of the US Constitution bars the admission, at a joint trial, of a nontestifying codefendant's confession which serves to incriminate the defendant even if the jury is given a limiting instruction and even if the defendant's own confession is admitted against him, the defendant's own confession may be considered on appeal in assessing whether any violation of the Confrontation Clause was harmless *(see, Cruz v New York,* 481 US —, 107 S Ct 1714). Where a Confrontation Clause violation is involved, the error under review will be deemed harmless only where it can be said that that error was harmless beyond a reasonable doubt *(see, Harrington v California,* 395 US 250; *People v Smalls,* 55 NY2d 407). To satisfy that criterion, there must be overwhelming proof of guilt and no reasonable possibility that the jury would have acquitted the defendant but for the subject error *(People v Crimmins,* 36 NY2d 230).

In the instant case, we conclude that any error occasioned by the violation of the *Bruton* rule and the court's denial of the defendant's severance motion does not require reversal. The detailed and repeated confessions made by the defendant to law enforcement officers, which were, in all respects, voluntary, along with the testimony of the medical examiner and

the blood sample extracted from the defendant's belt, provided overwhelming evidence of the defendant's guilt. Furthermore, there is no reasonable possibility that the jury would have acquitted the defendant but for the admission of LaBarbera's statements into evidence. Thus, we find the error to have been harmless beyond a reasonable doubt *(cf., People v Cruz,* 70 NY2d 733).

The numerous remaining arguments advanced by the defendant have been examined and found to be lacking in merit. Weinstein, J. P., Rubin, Kunzeman and Kooper, JJ., concur.